Filed 4/25/16  In re Audrey B. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re AUDREY B., a Person Coming Under the Juvenile Court Law. | B266228 |
| | (Los Angeles County Super. Ct. No. CK86096) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| LORENA G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tim Saito, Judge.  Affirmed.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Jeanette Cauble, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Lorena G., the mother of four-year-old Audrey B., appeals from the order of the juvenile court denying her petition under Welfare and Institutions Code section 388[1] seeking reinstatement of family reunification services and the subsequent order terminating her parental rights under section 366.26. Lorena contends the juvenile court erred in concluding she had failed to demonstrate the necessary changed circumstances in support of her section 388 petition, an error that also requires reversal of the order terminating her parental rights. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Detention and Jurisdiction*

On December 24, 2012 the Los Angeles County Department of Children and Family Services (Department) received a referral alleging then-one-year-old Audrey and her older siblings, Sophia V. (age 11) and Julian V. (age six), were at risk of physical and emotional abuse and general neglect by Lorena and her boyfriend, Michael B., the father of Audrey. According to the referral, Lorena and Michael had been arrested for burglary after breaking into the home of Michael's aunt and stealing a car, Christmas presents, jewelry and credit cards. Although the children were not with Lorena and Michael at the time, the caller alleged that Lorena was a methamphetamine user and that Audrey had been seen with bruises on many occasions. While the couple remained in jail, the Department confirmed Audrey could safely remain with her paternal grandmother, Donna B., and the grandmother's partner, June M., with whom the family had been living, and the older children could reside with their father, from whom Lorena had separated.

On January 18, 2013 Lorena and Michael were released from custody, pursuant to probation requirements that included drug treatment, counseling and parenting education. Lorena's parents agreed to allow the couple and their children to reside with them. Both Lorena and Michael tested negative for illicit substances on January 24, 2013.

---

[1] Statutory references are to this code.

On February 11, 2013 Lorena and Michael were again arrested, this time on charges of possession of stolen property and possession of a controlled substance. They also tested positive for amphetamine and methamphetamine on February 13, 2013.[2] On February 22, 2013 the juvenile court granted the Department's request for a removal warrant for Audrey. Audrey was detained and placed with Donna and June. On March 1, 2013 the Department filed a petition alleging Audrey was at risk of physical harm due to Lorena's current use of illicit drugs. (§ 300, subd. (b).) The petition also alleged Lorena's previous drug use had led to dependency jurisdiction over the older children.[3]

When interviewed by the Department, Lorena denied using drugs and attributed the couple's positive drug tests to their use of cold medicine. The jurisdiction/disposition hearing, originally scheduled for March 18, 2013, was continued after Lorena was again arrested on March 13, 2013. The Department reported Lorena had been incarcerated for violating the terms of her probation based on a January 15, 2013 arrest for receiving stolen property and possession of a controlled substance and a second arrest on January 31, 2013 for possession of drug paraphernalia. Michael was again arrested on May11, 2013 and incarcerated on new charges of forgery, possession of a controlled substance and drug paraphernalia, as well as violation of probation imposed as a result of the December 2012 charges.

On May 23, 2013, after both parents pleaded no contest to the jurisdiction allegations, the juvenile court sustained the allegations as amended, including the allegation Lorena had an 11-year history of abusing drugs. Audrey was declared a dependent of the court and removed from her parents' custody. Both parents were granted reunification services with monitored visitation. Lorena was ordered to

---

[2]    Sophia and Julian's father, F.V., was awarded sole physical custody of the children on February 15, 2013.

[3]    In 2011 the juvenile court had sustained allegations related to Lorena's drug use in a dependency action involving Sophia and Julian. The case was terminated in April 2012. The March 1, 2013 petition also alleged Audrey was at risk of harm as a result of Michael's drug use. Michael is not a party to this appeal.

participate in drug and alcohol abuse services with aftercare, random drug testing and a parenting class.

2. *Six- and 12-month Status Review*

Audrey remained in the care of Donna and June, who were also caring for Michael's older daughter, Donna B.  According to the six-month status review report, Audrey was thriving and meeting developmental goals.  Lorena had been released from custody in June 2013 but was arrested again on outstanding warrants in September 2013.  Although she had enrolled in parenting and drug treatment programs, she had not attended consistently and tested positive for methamphetamine on August 2, 2013.  Lorena also missed a number of drug tests, and the director of the drug treatment program advised the Department she should be enrolled in an inpatient program.  Lorena's visits with Audrey during the summer of 2013 were monitored by Lorena's mother, who reported Lorena visited three times weekly with Audrey, did not appear to be under the influence of drugs and was appropriate with Audrey.  After Lorena's positive drug test, however, the visits were moved to the Department's Glendora office and reduced to one two-hour visit each week, which ended after her September arrest.  Although she was released in October 2013, Lorena did not contact the Department to reinitiate visits.  Meanwhile, June's daughter, Melissa M., expressed a desire to adopt Audrey.  Based on these facts, the Department recommended the court terminate services for both parents.  At the hearing on November 23, 2013 the court found Lorena had made minimal progress in addressing the issues that necessitated placement but nonetheless ordered the continuation of reunification services.

According to the May 2014 12-month status review report, Lorena had again been arrested in January 2014 after a friend she was driving with led officers on a high-speed chase.  After the car stopped, both women fled but were quickly captured.  At the time, there were two outstanding felony warrants ordering Lorena's arrest, and a search of the car revealed a counterfeit driver's license in the friend's name and dozens of hydrocodone and Dilaudid pills.  On February 20, 2014 Lorena was sentenced to serve two years in state prison.  She had seen Audrey only twice between her September and

4

January arrests. She had also failed to complete a substance abuse program or appear for random drug tests. During this period, Audrey had been placed in the home of Melissa M. and continued to thrive. The Department recommended termination of the parents' reunification services and advised the court it was proceeding with a plan for Audrey to be adopted by her caregiver, for whom an adoptive home study was pending. On May 22, 2014 the juvenile court terminated family reunification services and set a section 366.26 selection and implementation hearing.

3. *The Initial Section 388 Petition*

On September 18, 2014 Lorena filed a section 388 petition seeking reinstatement of her reunification services. The petition alleged she had demonstrated changed circumstances through her participation in parenting, anger management and substance abuse classes and twice-monthly individual counseling while incarcerated. The petition further alleged reinstatement of reunification services would be in Audrey's best interests and advised that she would be released from custody on January 8, 2015, well within the 24 months of family reunification available to an incarcerated parent. The court set the petition for hearing on October 14, 2014 in conjunction with the section 366.26 hearing.[4]

The Department responded to the petition by acknowledging Lorena had completed the classes originally ordered by the court in May 2013 but contended reinstatement of services would not be in Audrey's best interests because it would delay permanency planning. Due to the distance between the prison and the caregiver's home, Lorena had not seen Audrey in nine months. Audrey had also developed a strong bond with Melissa M., who was committed to providing Audrey with a loving, stable and permanent home. Because Lorena would not be released from prison until January 2015 and the case had advanced to permanency planning, the Department recommended the petition be denied.

---

[4] In an October 2014 report prepared for the section 366.26 hearing, the Department recommended adoption by Melissa M. as the most appropriate permanent plan for Audrey and advised the court the necessary home study had been approved. At a hearing on December 16, 2014 the court ordered adoption as the permanent plan.

The joint hearing was continued on several occasions due to problems ensuring the notification or attendance of the incarcerated parents. Lorena was released in early January 2015. On January 13, 2015 the court again continued the hearing and ordered the Department to provide a supplemental report. The court also ordered monitored visitation for Lorena "as often as can be arranged," granted the Department discretion to liberalize visitation and ordered drug testing. Lorena entered a sober living residence and enrolled in parenting classes and drug treatment services. She also began telephone calls and visits with Audrey, who exhibited distress during calls and visits. Although Audrey became accustomed to the visits, the monitor reported Audrey was shy with Lorena and interacted with her more as a stranger than as a parent.

In April 2015 Melissa M. filed a request for de facto parent status that was set for hearing in conjunction with the pending section 388 petition and section 366.26 proceeding. She reported to the Department that Audrey's behavior had regressed and her emotional stability decreased since the visits began with Lorena. Audrey also frequently refused to speak with Lorena on the telephone. A psychological assessment provided to the court attributed this behavior to the "threat of loss" of Audrey's relationship with Melissa M. "due to the reintroduction to her biological mother." The psychologist further opined disruption of Audrey's bond with Melissa M., with whom Audrey had a "secure and healthy attachment," "will likely have severe and long-lasting consequences in her social and emotional development."

4. *The Supplemental Section 388 Petition*

On June 4, 2015 Lorena filed a supplemental section 388 petition requesting the court place Audrey with her. She alleged she had addressed the issues that had brought Audrey to the attention of the court and was now ready to provide Audrey with a permanent home.

The Department filed a supplemental response reporting Lorena had continued to test negative for drugs since her release and to participate in substance abuse programs. The director of Lorena's residential program affirmed she was progressing well and had shown deep sincerity in wanting to improve her life. According to the visitation monitor,

6

Lorena had appropriately engaged with Audrey, who was notably more cooperative during visits although she did not appear to be bonded with Lorena. The Department asserted it would not be in Audrey's best interests to reunify with Lorena, particularly in light of Lorena's short time out of prison and Audrey's bond with Melissa M.

5. *The Joint Contested Section 388/Section 366.26/De Facto Parent Hearing*

The hearing on the three pending proceedings began on July 21, 2015. The court granted Melissa M.'s request for de facto parent status. Lorena testified at length in support of her section 388 petition regarding the improvement of her relationship with Audrey and her commitment to sobriety: She had the support of her church, family and 12-step program and had transitioned to the outpatient program of her recovery home. She believed Audrey should be returned to her so she could be raised with her siblings, although she acknowledged she did not have custody of any of them.[5] Lorena's counsel argued the Department had essentially agreed she had demonstrated changed circumstances and that her improving relationship with Audrey warranted a change in Audrey's placement. Audrey's counsel joined with the County in opposing the reinstatement of reunification services or any change in custody. In particular, she asserted Audrey's improved interaction with Lorena did not overcome the bonded relationship Audrey had with Melissa M.

Ruling on the section 388 petition, the court commended Lorena's substantial progress in addressing the issues that brought Audrey to the attention of the court but found she had failed to demonstrate changed, rather than changing, circumstances. The court also found it would not be in Audrey's best interest to grant the petition. Following argument on the section 366.26 proceeding, the court terminated parental rights and designated Melissa M. as Audrey's prospective adoptive parent.

---

[5]     Sophia and Julian remained with their father. Donna continued to live with Michael's mother, Donna, and Melissa M.'s mother, June.

7

**DISCUSSION**

1. *Governing Law*

Section 388 provides for modification of prior juvenile court orders when the petitioner presents new evidence or a change of circumstances and demonstrates modification of the previous order is in the child's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 ["[s]ection 388 provides the 'escape mechanism' that . . . must be built into the process to allow the court to consider new information"].) The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child. (§ 388; *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.) "'[I]t is not enough for [the petitioner] to show *just* a genuine change of circumstances under the statute. The [petitioner] must show that the undoing of the prior order would be in the best interests of the child. [Citation.]' [Citation.] Furthermore, the petitioner must show *changed,* not changing, circumstances. [Citation.] The change of circumstances or new evidence 'must be of such significant nature that it requires a setting aside or modification of the challenged prior order.'" (*Mickel O.,* at p. 615.)

When a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interests. (*In re Stephanie M., supra,* 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 960.) Because time is of the essence to young children, when it comes to securing a stable, permanent home, prolonged uncertainty is not in their best interest. (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 674 ["'[t]here is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged'"]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531 ["our

8

Supreme Court made it very clear in *Jasmon O.*[, *supra,* 8 Cal.4th 398] the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion"].)[6]

We review the juvenile court's order for abuse of discretion and may disturb the exercise of that discretion only in the rare case when the court has made an arbitrary, capricious or "patently absurd" determination. (*In re Stephanie M., supra,* 7 Cal.4th at p. 318.) We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court. (*Ibid.*) We ask only whether the juvenile court abused its discretion with respect to the order it actually made. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)

> 2. *The Juvenile Court Did Not Abuse Its Discretion in Denying Lorena's Section 388 Petition*

As is frequently true in dependency proceedings, the critical factor in this case is time. Lorena's progress toward recovery is certainly commendable and, had she made that progress when the juvenile court was first required to exercise jurisdiction over Audrey, there is little doubt she would have been reunified with Audrey. That is not what

---

[6]    The parties disagree as to which factors are appropriately considered in assessing the best interests of the child at this stage. Typically, in considering whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner. (*In re Mickel O., supra*, 197 Cal.App.4th at p. 616; *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.) In its decision in *In re J.C.* (2014) 226 Cal.App.4th 503, Division Three of the Fourth District focused primarily on the child's need for permanency and stability, as directed in *Stephanie M*. (*J.C.,* at p. 527.) We do not view the inquiry as an either/or question. Not all cases implicate the same factors: "[B]est interests is a complex idea" that requires consideration of a number of factors. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532; see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832-833.) The distinction is more a matter of emphasis; post-permanency plan petitions must be evaluated in light of the child's need for permanency and stability, but not to the exclusion of all other factors.

happened, however. The record establishes that Lorena's addiction was lengthy and profound and she made no commitment to recovery until she was incarcerated in state prison. At that juncture, almost a year after Audrey had been detained, Lorena was forced to seriously confront the addiction that had precipitated her multiple arrests and loss of custody of her children. Released from prison a year later, she had yet to live on her own or to progress past weekly monitored visits with Audrey. It is no surprise, therefore, that in July 2015 the juvenile court viewed her circumstances, including the fact she was only six months removed from prison, as still changing rather than changed. This finding is amply supported by the evidence.

Moreover, there was uncontroverted evidence Audrey's best interests were served by leaving her in the only family she could remember. From the date of Lorena's arrest in January 2014 until her release a year later, she had no contact with her child. As a result, Audrey spent two years—from the age of one until the age of three—with only sporadic interaction with her mother. From February 2013 to February 2014, Audrey lived with Donna and June. Melissa M., who was already part of her extended family, became Audrey's primary bond when she was placed in Melissa's home in early 2014. By all accounts, that relationship was stable, loving and maternal. Audrey thrived. When forced to integrate Lorena into her life, Audrey struggled and regressed. The psychologist's April 2015 assessment not only found that Lorena's visits were causing Audrey's regression but also cautioned that the disruption of Audrey's bond with Melissa would seriously harm her emotional development. This evidence was more than adequate to support the court's finding that granting Lorena's requests for reunification services and a change of custody was not in Audrey's best interests.

In short, the juvenile court did not abuse its discretion in denying Lorena's section 388 petition.

## DISPOSITION

The orders of the juvenile court are affirmed.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.